IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 20, 2001

## STATE OF TENNESSEE v. NORMAN B. THOMPSON

**Appeal from the Criminal Court for Knox County**
**No. 63502, 63503     Ray L. Jenkins, Judge**

---

**No. E2000-01017-CCA-R3-PC**
**March 28, 2001**

---

The Defendant, Norman B. Thompson, appeals as of right from the revocation of his probation. We find no abuse of discretion in the revocation; thus, we affirm the judgment of the trial court revoking the Defendant's probation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

Mark E. Stephens, District Public Defender; Paula R. Voss, Assistant Public Defender, Knoxville, Tennessee, for the appellant, Norman B. Thompson.

Paul G. Summers, Attorney General and Reporter; Clinton J. Morgan, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Leon Franks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On July 31, 1998, the Defendant pled guilty to two counts of the sale of cocaine. He was sentenced as a Range I, standard offender to concurrent eight year sentences, which were suspended. The Defendant was placed on intensive probation for the duration of his sentences. On February 22, 1999, a probation violation warrant was filed, alleging that the Defendant had violated several conditions of his probation, including: (1) no use of intoxicants of any kind or possession of narcotic drugs or marijuana; (2) payment of all required fees; (3) performance of eight hours of community service per month; and (4) observation of curfew hours between 6:00 p.m. and 6:00 a.m. He was released from jail and ordered to reside at the Coker Hall halfway house until his court date. He left the halfway house without permission, and a capias was issued on May 4, 1999 for his arrest. The Defendant was not arrested until January 15, 2000, and his case remained inactive in the interim. A probation revocation hearing was held on April 10, 2000, after which the trial court denied the Defendant's request to be placed under the supervision of the Community Alternatives to Prison

Program (CAPP) and instead revoked his probation and ordered execution of the original judgment. The Defendant argues on appeal that the trial court erred by revoking his probation, by failing to make specific findings of fact on the record, and by failing to reconsider the principles of sentencing to determine whether the Defendant should serve his sentence in incarceration or in the CAPP program.

A trial judge is vested with the discretionary authority to revoke probation if a preponderance of the evidence establishes that a defendant violated the conditions of his or her probation. Tenn. Code Ann. §§ 40-35-310, -311(e); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). The trial judge must, however, adduce sufficient evidence during the probation revocation hearing to allow him or her to make an intelligent decision. See Mitchell, 810 S.W.2d at 735.

When a probation revocation is challenged, the appellate courts have a limited scope of review. For an appellate court to be warranted in finding that a trial judge abused his or her discretion by revoking probation, it must be established that the record contains no substantial evidence to support the trial judge's conclusion that a probation violation occurred and that because of the violation, probation should be revoked. See State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997).

After reviewing the record of the probation revocation hearing, we are unable to conclude that no substantial evidence supports the probation revocation. At the hearing, Randall Hampson testified that he was the probation officer assigned on July 31, 1998 to supervise the Defendant. He stated that the Defendant initially did well on probation, but then he returned a positive drug test in November of 1998. When the Defendant was released from jail in March of 1999, he was ordered to reside in a halfway house and to begin treatment for his drug abuse problem. According to Mr. Hampson, the Defendant was discharged from the halfway house for violation of house rules and for moving out of the house. Mr. Hampson further testified that the Defendant had been instructed to attend Alcoholics Anonymous (AA) and Narcotics Anonymous (NA) meetings and that he was scheduled for a drug treatment evaluation on April 19, 1999 at the Lighthouse treatment program. The Defendant failed to attend the scheduled evaluation, and he provided no proof of his attendance at AA or NA meetings. Additionally, the Defendant returned another positive drug screen in April of 1999. He also violated curfew on four days in April. He made no payments toward his criminal injury and supervision fee, and he performed no community service. These were all conditions of his probation. The last time the Defendant reported to Mr. Hampson pursuant to his probation was April 26, 1999. Mr. Hampson said that he was unable to contact the Defendant after that date.

Ms. Tracey Conner testified that she interviewed the Defendant in March of 2000 to evaluate his suitability for the CAPP program. She said that based on his history with enhanced probation, she did not believe the Defendant was a suitable candidate for CAPP. It was her understanding, based on conversations with Mr. Hampson, the Defendant's probation officer, that the Defendant failed to comply with his treatment program, that he had positive drug screens, that he had curfew violations, that he failed to pay court costs, and that he absconded from the probation program. Also, she did not feel that the Defendant was honest with her in the interview. He did not tell her about

the positive drug screens, and he told her that he had not used drugs in over a year and a half, when he had a positive drug screen in April of 1999. She was particularly concerned that the Defendant did not comply with the drug treatment plans that had been arranged for him previously. She did admit that she did not personally check to see whether the Defendant had been to any of the treatment programs; she relied upon the information received from the probation officer.

The Defendant testified that he had a drug addiction in the past, but that he is no longer addicted. He stated that he went to NA meetings while on probation, and he went on a weekend treatment program while at the halfway house. He said that Mr. Randy Geams, the person in charge of the halfway house, should have proof that he attended those meetings. He stated that he did not know about the appointment at the Lighthouse treatment program. The Defendant testified that he left the halfway house because it was not run correctly. He said that at times there was not enough food there for the residents, who paid ninety dollars a week to live there. He could not explain why he did not contact his probation officer for a year, but admitted that it was possibly because he did not want to go to jail. However, the Defendant said that he could abide by the rules of the CAPP program and that he could successfully complete that program if allowed to do so.

Based on this testimony, we conclude that substantial evidence supports the trial court's finding of probation violations and conclusion that revocation should occur. The Defendant had two positive drug screens, he did not complete his drug treatment, he violated curfew, he made no fee payment, he performed no community service, and he had no contact with his probation officer from April 26, 1999 until the revocation hearing on April 10, 2000. These were all violations of his conditions of probation.

While we agree with the Defendant that the trial court should have made more specific written findings of fact on the record, see Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980), we find no prejudice. In its order revoking probation, the trial court stated, "[T]he Court does find that the defendant has been guilty of violating the laws of this State, and has otherwise violated the conditions of his probation." While a more specific enumeration of how the Defendant has "otherwise violated the conditions of his probation" is preferable, this Court has held similar deficiencies to be harmless in light of a specific finding that the defendant violated the laws of the State, which is itself a specific ground for revocation. See State v. Ricky Davis, No. 03C01-9706-CC-00215, 1998 WL 205925, at *2 (Tenn. Crim. App., Knoxville, Apr. 29, 1998); State v. Yvonne Burnette, No. 03C01-9608-CR-00314, 1997 WL 414979, at *3 n.5 (Tenn. Crim. App., Knoxville, July 25, 1997), perm. app. denied (Tenn. Apr. 13, 1998); see also State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984) (defendant not entitled to reversal when not prejudiced by procedural deficiencies); Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a). Moreover, during the revocation hearing, the trial court did state on the record,

> Well, it's been a while since I've seen a defendant that just takes a probationary sentence and rearranges it to suit his own whims. He knows more than anybody, more than the people at the Lighthouse, more than the people at CAPP. You can't be supervised unless you report, and certainly you can't be supervised while you're on absconder status.

This statement indicates that the trial court found that the Defendant violated his probation by failing to report as required. Thus, we find any error in failing to make more specific written findings on the record to be harmless.

Finally, the Defendant asserts that the trial court erred by ordering him to serve his sentence in incarceration without reconsidering the principles of sentencing to determine whether he should instead serve his sentence in the CAPP program. However, the trial court is not required to reconsider the principles of sentencing in a probation revocation proceeding. See State v. Troy McLemore, No. 03C01-9709-CC-00406, 1998 WL 422339, at *2 (Tenn. Crim. App., Knoxville, July 28, 1998); Burnette, 1997 WL 414979, at *2; State v. Stevie Q. Taylor, No. 02C01-9504-CC-00108, 1996 WL 218332, at *2 (Tenn. Crim. App., Jackson, May 1, 1996). Upon revocation of probation, the trial court has the authority to order a defendant to serve his or her sentence in incarceration. See State v. Hunter, 1 S.W.3d 643, 646 (Tenn. 1999); Tenn. Code Ann. § 40-35-310. Accordingly, we find no error.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE